IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Alex D. Taylor, | ) | C/A No.: 1:12-547-MGL-SVH |
| Plaintiff, | ) | |
| vs. | ) | ORDER AND REPORT AND RECOMMENDATION |
| Amanda Albright, Classification Case Worker; Wayne McCabe, Warden, | ) | |
| Defendants. | ) | |

Alex D. Taylor ("Plaintiff"), proceeding *pro se* and in *forma pauperis*, brought this civil rights action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights while incarcerated at Lieber Correctional Institution ("LCI") of the South Carolina Department of Corrections ("SCDC"). Plaintiff sues LCI classification caseworker Amanda Albright and LCI warden Wayne McCabe (collectively "Defendants"). This matter is before the court on Defendants' motion for summary judgment. [Entry #41]. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2)(d) (D.S.C.). Because the motion is dispositive, this Report and Recommendation is entered for review by the district judge.

I.   Factual Background

Plaintiff alleges that on August 4, 2010, he had a piece of paper covering his cell window in the special management unit while he was using the restroom. He alleges Albright ordered him to take it down. [Entry #1 at 4–5]. According to the verified

complaint,[1] Plaintiff told Albright he would take the paper down when he was finished using the restroom. *Id*. at 5. Plaintiff alleges Albright "insisted that Plaintiff take [the paper] down immediately, whereupon Plaintiff replied with 'in a minute.'" Plaintiff alleges that Albright then administered 11.8 grams of chemical munitions under his cell door. *Id*. According to the complaint, the chemical munitions caused Plaintiff to gag, choke, and cough uncontrollably and he suffered blurry eyes and an anxiety attack. *Id.* Plaintiff alleges he was not allowed to take a shower to wash the chemical munitions off of him until the next scheduled shower day. *Id.* Although Defendants argue in their motion that he had running water in his cell [Entry #36 at 5], Plaintiff disputes this fact [Entry #41 at 6]. Additionally, Defendants contend that "there is a written record of [Plaintiff] being assessed by Nurse Pollard who found him in no acute distress." [Entry #36 at 5]. However, the only record Defendants submitted is a report on the use of force that appears to be signed by Nurse Pollard three days after the incident on August 7, 2010, and provides no comment about Plaintiff's condition. [Entry #36-2 at 3].

Defendants filed their motion for summary judgment on July 19, 2012. [Entry #36]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the summary judgment procedures and the possible consequences if he failed to respond adequately to Defendants' motion. [Entry #37]. Plaintiff filed a timely

---

[1] In this Circuit, verified complaints by pro se litigants are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff has filed a verified Complaint. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.

response to Defendants' motion on August 9, 2012. [Entry #41]. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends the district judge grant summary judgment as to McCabe and deny summary judgment as to Albright.

II.  Discussion

    A.  Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; " or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However,

"[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

    B.    Analysis

        1.    Excessive Force

Plaintiff claims Albright's use of the chemical munitions constitutes excessive force in violation of the Eighth Amendment. It is well-established that the use of excessive force upon an inmate by correctional officers violates the Eighth Amendment's prohibition against cruel and unusual punishment. *Hudson v. McMillan*, 503 U.S. 1, 5 (1992).

In an excessive force case, a claimant must meet a heavy burden to satisfy the subjective component of the claim; specifically, he must prove that correctional officers applied force "maliciously and sadistically for the very purpose of causing harm" rather than in a good-faith effort to maintain or restore discipline. *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986); *see also Wilkins v. Gaddy*, 130 S.Ct. 1175 (2010). The objective

component of an excessive force claim is not nearly as demanding, however, because "'[w]hen prison officials maliciously and sadistically use force to cause harm'. . . 'contemporary standards of decency are always violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.'" *Wilkins*, 130 S.Ct. at 1178 (quoting *Hudson v. McMillan*, 503 U.S. 1, 7 (1992)).

However, courts must give "wide-ranging deference" to the execution of policies and practices that in the judgment of the prison officials are necessary "to preserve internal order and discipline and to maintain institutional security." *Whitley,* 475 U.S. at 321–22. The Supreme Court has recognized that prison officials work in an environment where there is an ever-present potential for violence and unrest, and that courts should not substitute their judgment for that of the officials who must make a choice at the moment when the application of force is needed. *Id.* The deference owed to prison administrators extends to "prophylactic or preventive measures intended to reduce the incidence of . . . breaches of prison discipline." *Id.* at 322.

Federal courts closely scrutinize the use of tear gas or mace in correctional facilities. *See, e.g., Bailey v. Turner*, 736 F.2d 963 (4th Cir. 1984); *Greear v. Loving*, 538 F.2d 578 (4th Cir. 1976). This is because, even when properly used, such weapons "possess inherently dangerous characteristics capable of causing serious and perhaps irreparable injury to the victim." *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984),

5

*cert. denied*, 470 U.S. 1035 (1985). Accordingly, although it is not per se unconstitutional for guards to spray mace at prisoners confined in their cells, it is necessary to examine the "totality of the circumstances, including the provocation, the amount of gas used, and the purposes for which the gas is used [to] determin[e] the validity of the use of tear gas in the prison environment." *Bailey*, 736 F.2d at 969; *see also, Justice v. Dennis*, 834 F.2d 380, 383 (4th Cir. 1987) (en banc), *vacated on other grounds*, 490 U.S. 1087 (1989).

Mace and pepper spray can be constitutionally used in small quantities to control a "recalcitrant inmate." *Bailey*, 736 F.2d at 968-69. A limited application of chemical munitions may be "much more humane and effective than a flesh to flesh confrontation with an inmate." *Soto v. Dickey*, 744 F2d 1260, 1270 (7th Cir. 1984). Moreover, prompt washing of the affected area of the body will usually provide immediate relief from pain. *Id.* Furthermore, because a limited use of mace constitutes a relatively "mild" response compared to other forms of force, the initial application of mace indicates a "tempered" response by the prison officials. *Williams v. Benjamin*, 77 F3d 756, 763 (4th Cir. 1996).

The Supreme Court has directed that several factors should be balanced in determining whether prison officials acted maliciously and sadistically. These factors include (1) the necessity for the application of force; (2) the relationship between the need for force and the amount of force used; (3) the extent of the injury actually inflicted; (4) the extent of the threat to the safety of the staff and prisoners, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) the efforts taken by the officials, if any, to temper the severity of the force applied. *Whitley*, 475

U.S. at 321.

Here, Albright's decision to use some force was justified, as Plaintiff admits that he did not promptly comply with Albright's directive to take the paper down from his cell window. However, it is not clear whether the need for force and the amount of force used was reasonable when the undersigned considers Plaintiff's allegations that he was not allowed cold water to flush his face and eyes and did not receive medical attention after the chemical munitions were administered. Neither party has submitted medical records regarding the extent of Plaintiff's injury, if any. In light of Plaintiff's allegation he was not offered medical attention, the undersigned cannot conclude that Plaintiff was not injured. It appears that Albright was reasonable in perceiving a threat from Plaintiff, as he admits he refused to immediately comply with her directive and had blocked her view of him through the cell window. Although Plaintiff was confined in his cell, inmates cannot be allowed to be violate direct orders of the correctional officers. With regard to Albright's efforts to temper the severity of the force applied, Defendants have submitted no evidence that Plaintiff was allowed to flush out his eyes with cold water or received medical attention.

In *Williams v. Benjamin*, 77 F.3d 756 (4th Cir. 1996), Plaintiff alleged guards at LCI sprayed him with mace and then placed him in four-point restraint without allowing him to wash his eyes or providing him with medical attention. The *Williams* court found that "Although great deference should be afforded prison officials, it is difficult to conceive of a legitimate purpose for refusing Williams to wash and denying him medical

7

attention . . . ." *Id*. at 765. Although *Williams* involved the use of restraints after the mace, which is absent here, the court also noted that "[i]t must be remembered that at this stage we are not called upon to determine whether there was sufficient evidence that the prison officials actually acted in bad faith or for no legitimate purpose. Instead, our present inquiry is whether the evidence, viewed in the light most favorable to *Williams*, supports a 'reliable inference of wantonness in the infliction of pain.'"" (quoting *Whitley*, 475 U.S. at 322). After balancing the *Whitley* factors and in light of Plaintiff's allegation that he was not allowed to flush his eyes with water,[2] the undersigned cannot conclude that Albright did not use excessive force on Plaintiff. The undersigned therefore recommends summary judgment be denied as to Albright.

2. Liability of McCabe

Plaintiff's only allegation regarding McCabe is that he denied Plaintiff's grievance and that he allows "a loose use of chemical munition in the SMU." [Entry#1 at 6]. To the extent Plaintiff has sued McCabe regarding the denial of the grievance, his claim must fail as there is no constitutional right to a grievance policy. *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994).

McCabe also contends that Plaintiff failed to make any actual allegations against him and he cannot be held liable on a theory of *respondeat superior* or vicarious liability.

---

[2] The undersigned notes that it appears that Plaintiff had access to toilet water, which may be sufficient for allowing a plaintiff to flush out his eyes. *See, e.g. Sharp v. Longe*, No. 1:09-2402, 2011 WL 489938 (D.S.C. Jan 07, 2011), *adopted by* 2011 WL 489936 (D.S.C. Feb 07, 2011). However, Defendants have provided no affidavits or other evidence with regard to this fact and the undersigned is constrained to make this recommendation based on the facts in the record presented.

The doctrine of *respondeat superior* generally is inapplicable to § 1983 suits, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom which results in illegal action. *See Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978); *Fisher v. Washington Metro. Area Transit Authority*, 690 F.2d 1133, 1142–43 (4th Cir. 1982). Higher officials may be held liable for the acts of their subordinates, however, if the official is aware of a pervasive, unreasonable risk of harm from a specified source and fails to take corrective action as a result of deliberate indifference or tacit authorization. *Slakan v. Porter*, 737 F.2d 368 (4th Cir. 1984), *cert. denied*, *Reed v. Slakan*, 470 U.S. 1035 (1985).

Plaintiff has not alleged that McCabe was personally responsible for the use of chemical munitions of which he complains or acted in any way other than a supervisory role. Further, Plaintiff has not shown that McCabe was deliberately indifferent to, or tacitly authorized, the use of force. Finally, Plaintiff fails to show that his injury was caused by McCabe's actions or inactions, as his complaint about McCabe are limited to McCabe's response to a grievance regarding the injury at issue. *See Randall v. Prince George's Cnty., Md.*, 302 F.3d 188, 206 (4th Cir. 2002) (requiring an "'affirmative causal link'" between a supervisor's alleged inaction and the constitutional injury suffered by Plaintiff) Thus, Plaintiff fails to show that McCabe is liable on a theory of *respondeat superior* or supervisory liability, and it is therefore recommended that he be granted summary judgment.

B.  Motion to Stay

The undersigned notes that Defendants filed a motion to stay discovery on July 13, 2012. [Entry #33]. It appears this motion is moot as the discovery deadline expired on June 19, 2012. In addition, the portion of the motion requesting amendment of the undersigned's June 29, 2012 order [Entry #29] is now moot in light of Entry #42.

III. Conclusion

For the foregoing reasons, the undersigned recommends the district judge grant summary judgment as to McCabe and deny summary judgment as to Albright.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

September 20, 2012  
Columbia, South Carolina

Shiva V. Hodges  
United States Magistrate Judge

**The parties are directed to note the important information in  
the attached "Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).