IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Alex D. Taylor, | ) | C/A No.: 1:12-547-DCN-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Amanda Albright, Classification Case Worker, | ) | |
| | ) | |
| Defendants. | ) | |

Alex D. Taylor ("Plaintiff"), proceeding *pro se* and in *forma pauperis*, brought this civil rights action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights while incarcerated at the Lieber Correctional Institution ("LCI") of the South Carolina Department of Corrections ("SCDC"). Plaintiff sues LCI classification caseworker Amanda Albright.[1] This matter is before the court on defendant Albright's renewed motion for summary judgment. [Entry #51]. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2)(d) (D.S.C.). Because the motion is dispositive, this Report and Recommendation is entered for review by the district judge.

I.     Factual and Procedural Background

Albright filed her original motion for summary judgment on July 19, 2012. [Entry #36]. After consideration of the parties' submissions and the record, the undersigned recommended the district judge deny summary judgment as to Albright in a September

---

[1] Plaintiff also sued LCI Warden Wayne McCabe, but he was dismissed by order of the Honorable David C. Norton, United States District Judge, on March 6, 2013. [Entry #61].

20, 2012 Report and Recommendation ("prior Report"). [Entry #44]. Specifically, the undersigned noted that Albright had failed to show that her use of force was tempered by allowing Plaintiff to flush out his eyes with water or by providing him medical attention. In response, Albright filed a document entitled "Objections to Magistrate's Report and Recommendation and Renewed Motion for Summary Judgment." [Entry #51]. On March 6, 2013, United States District Judge David C. Norton remanded this case to the undersigned for consideration of Albright's renewed motion. [Entry #61]. Judge Norton permitted Plaintiff 45 days within which to respond to the renewed motion. *Id*. Plaintiff filed a response on April 22, 2013. [Entry #65]. This matter having been fully briefed, it is now ripe for disposition.

Plaintiff alleges that on August 4, 2010, he covered the window of his cell with paper because he was using the restroom.[2] He alleges Albright ordered him to take the paper down. [Entry #1 at 4–5]. According to his verified complaint,[3] Plaintiff told Albright he would take the paper down when he was finished using the restroom. *Id*. at 5. Plaintiff alleges Albright "insisted that Plaintiff take [the paper] down immediately, whereupon Plaintiff replied with 'in a minute.'" *Id*. Plaintiff alleges that Albright then administered 11.8 grams of chemical munitions under his cell door. *Id*. According to the

---

[2] Plaintiff's and Albright's version of the events giving rise to the complaint differ. Because at the summary judgment stage the facts must be viewed in the light most favorable to the nonmoving party, the undersigned recites Plaintiff's version of the facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

[3] In this Circuit, verified complaints by pro se litigants are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991).

complaint, the chemical munitions caused Plaintiff to gag, choke, and cough uncontrollably and he suffered blurry eyes and an anxiety attack. *Id*.

Plaintiff alleges he was not allowed to take a shower to wash the chemical munitions off until the next scheduled shower day. *Id.* Defendants argued in their original motion for summary judgment that Plaintiff had running water in his cell [Entry #36 at 5], which Plaintiff disputed [Entry #41 at 6]. Additionally, Defendants contended that "there is a written record of [Plaintiff] being assessed by Nurse Pollard who found him in no acute distress." [Entry #36 at 5]. The record Defendants submitted is a report on the use of force that appears to be signed by Nurse Pollard. [Entry #36-2 at 3]. It provides no comment about Plaintiff's condition, *id*., and Plaintiff disputed that he was seen by medical. [Entry #41 at 7]. The report on use of force is illegible as to whether it was signed on August 4, 2010 or August 7, 2010. *Id*. Albright testified in Plaintiff's prison disciplinary hearing that she had been informed that Plaintiff was seen by medical when she called to get the use of force form. [Entry #51-2 at 3; Entry #65 at 1–2].

In the renewed motion, Albright submitted an affidavit from LCI building and grounds manager Arnold Holmes, who attests that after a review of all Special Management Unit ("SMU") maintenance records, he found no record of issues related to running water in the SMU A Wing on August 4, 2010 or any complaint about a lack of water from Plaintiff during August 2010. [Entry #51-2].[4] In response, Plaintiff explained:

> Due to oldness and/or other maintenance problems in the SMU cells, there are times when an officer may have to cut off a portion of the water (hot

---

[4] Although the parties have not stated it explicitly, it appears that Plaintiff was housed in cell 225 of the SMU A Wing at the time of the incident.

water, cold water, toilet water) when it malfunctions. For example, if a prisoner press[es] the hot water button it may continue to run and overflow the sink. An officer will, therefore, cut off the hot water for a while then cut it back on a day or two later. If this doesn't work, then a work order is filed with [the] maintenance office. Furthermore, if a prisoner, whose hot water is cut off in cell 125 then the hot water in cell 225 is cut off also, because the two cells are connected. Thus, on the date of the incident plaintiff's cold water was shut off due to its constant running. A complaint was never filed due to the fact that it was cut back on two days later without overflowing. This is a common occurrence in SMU.

[Entry #65 at 2–3].

II.     Discussion

    A.     Summary Judgment Standard

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; " or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving

4

party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

    B.    Analysis

        1.    Excessive Force

Plaintiff claims Albright's use of the chemical munitions constitutes excessive force in violation of the Eighth Amendment. It is well-established that the use of excessive force upon an inmate by correctional officers violates the Eighth Amendment's prohibition against cruel and unusual punishment. *Hudson v. McMillan*, 503 U.S. 1, 5 (1992).

In an excessive force case, a claimant must meet a heavy burden to satisfy the subjective component of the claim; specifically, he must prove that correctional officers applied force "maliciously and sadistically for the very purpose of causing harm," rather than in a good-faith effort to maintain or restore discipline. *Whitley v. Albers*, 475 U.S.

5

312, 320–21 (1986); *see also Wilkins v. Gaddy*, 559 U.S. 34 (2010). The objective component of an excessive force claim is not nearly as demanding, however, because "'[w]hen prison officials maliciously and sadistically use force to cause harm'. . . 'contemporary standards of decency are always violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.'" *Wilkins*, 559 U.S. at \_\_, 130 S.Ct. at 1178 (quoting *Hudson v. McMillan*, 503 U.S. 1, 7 (1992)).

However, courts must give "wide-ranging deference" to the execution of policies and practices that in the judgment of the prison officials are necessary "to preserve internal order and discipline and to maintain institutional security." *Whitley,* 475 U.S. at 321–22. The Supreme Court has recognized that prison officials work in an environment where there is an ever-present potential for violence and unrest, and that courts should not substitute their judgment for that of the officials who must make a choice at the moment when the application of force is needed. *Id.* The deference owed to prison administrators extends to "prophylactic or preventive measures intended to reduce the incidence of . . . breaches of prison discipline." *Id.* at 322.

Federal courts closely scrutinize the use of tear gas or mace in correctional facilities. *See, e.g., Bailey v. Turner*, 736 F.2d 963 (4th Cir. 1984); *Greear v. Loving*, 538 F.2d 578 (4th Cir. 1976). This is because, even when properly used, such weapons "possess inherently dangerous characteristics capable of causing serious and perhaps irreparable injury to the victim." *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984),

*cert. denied*, 470 U.S. 1035 (1985). Accordingly, although it is not per se unconstitutional for guards to spray mace at prisoners confined in their cells, it is necessary to examine the "totality of the circumstances, including the provocation, the amount of gas used, and the purposes for which the gas is used [to] determin[e] the validity of the use of tear gas in the prison environment." *Bailey*, 736 F.2d at 969; *see also, Justice v. Dennis*, 834 F.2d 380, 383 (4th Cir. 1987) (en banc), *vacated on other grounds*, 490 U.S. 1087 (1989).

Mace and pepper spray can be constitutionally used in small quantities to control a "recalcitrant inmate." *Bailey*, 736 F.2d at 968–69. A limited application of chemical munitions may be "much more humane and effective than a flesh to flesh confrontation with an inmate." *Soto v. Dickey*, 744 F2d 1260, 1270 (7th Cir. 1984). Moreover, prompt washing of the affected area of the body will usually provide immediate relief from pain. *Id.* Furthermore, because a limited use of mace constitutes a relatively mild response compared to other forms of force, the initial application of mace indicates a "tempered" response by the prison officials. *Williams v. Benjamin*, 77 F.3d 756, 763 (4th Cir. 1996).

The Supreme Court has directed courts to balance several factors in determining whether prison officials acted maliciously and sadistically. These factors include (1) the necessity for the application of force; (2) the relationship between the need for force and the amount of force used; (3) the extent of the injury actually inflicted; (4) the extent of the threat to the safety of the staff and prisoners, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) the efforts taken by the officials, if any, to temper the severity of the force applied. *Whitley*, 475 U.S. at 321.

Here, Albright's decision to use some force was justified, as Plaintiff admits that

7

he did not promptly comply with Albright's directive to take the paper down from his cell window. It appears that, under the circumstances of this case, the 11.8 grams of chemical munitions was not excessive, as it was administered under Plaintiff's cell door and he has not claimed any long term injury. Beyond his own allegations, Plaintiff has provided no evidence, in the form of medical records or otherwise, that he was injured by the chemical munitions. Further, Albright was reasonable in perceiving a threat from Plaintiff, who admits that he disobeyed her direct order. Although Plaintiff was confined in his cell, inmates cannot be allowed to be disruptive and violate direct orders of the correctional officers.

In the prior Report, the undersigned recommended the district judge deny summary judgment as to Albright based on a failure to temper the use of force, as Plaintiff alleged that he was not given a chance to flush out his eyes with water and did not receive medical attention. [Entry #44]. Albright has now set forth evidence showing that she had no notice that Plaintiff did not have running water in his cell. [Entry #51-2]. Further, Plaintiff has not alleged that he complained about the lack of water in his cell or the need to flush out his eyes to Albright or anyone else. Although the court construes all disputes of fact in favor of Plaintiff for summary judgment purposes, only disputes over facts that might affect the outcome of the suit under governing law will properly preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). In the instant case, Plaintiff has not disputed that Albright was unaware that the water in Plaintiff's cell was not working, particularly because he claims he was using the restroom when she ordered him to take down the paper covering his cell window. Therefore,

Plaintiff has not shown that Albright acted maliciously and sadistically to deprive him of the ability to flush out his eyes.

Additionally, Plaintiff claims he was without medical care. The date that the nurse signed the report on use of force could be read as "8/4/10" or "8/7/10." Albright testified in Plaintiff's prison disciplinary hearing that she was informed that Plaintiff had been seen by medical when she called to obtain the use of force form. [Entry #51-2 at 3; Entry #65 at 1–2]. Assuming as true for the purposes of summary judgment that Plaintiff was not seen by medical personnel on August 4, 2010, Plaintiff has still failed to prove that Albright maliciously and sadistically withheld medical treatment from Plaintiff, as he does not dispute her testimony that she was informed that medical staff had evaluated him. Therefore, Plaintiff has failed to set forth a genuine dispute of material fact.

Because Plaintiff has failed to show that Albright knew Plaintiff did not have access to water to flush out his eyes or that he did not receive medical attention on the day of the incident, he has failed to show that she failed to temper the force applied. Therefore, after a balance of the *Whitley* factors, the undersigned recommends Albright be granted summary judgment in this matter.

III. Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends the district judge grant Albright's renewed motion for summary judgment. [Entry #51].

9

    IT IS SO RECOMMENDED.

*Shiva V. Hodges*

May 30, 2013                                        Shiva V. Hodges
Columbia, South Carolina          United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).